```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        |
ST. BARNABAS HOSPITAL and ST. BARNABAS  |
COMMUNITY HEALTH PLAN, INC.,            |
                                        |
            Plaintiffs,                 |
                                        |   04 Civ. 2778 (KMW)
      -against-                         |
                                        |   OPINION AND ORDER
AMISYS, LLC,                            |
                                        |
            Defendant/                  |
            Third-Party Plaintiff,      |
                                        |
      -against-                         |
                                        |
McKESSON INFORMATION SOLUTIONS, INC.,   |
McKESSON CORPORATION, and McKESSON      |
CAPITAL CORPORATION,                    |
                                        |
            Third-Party Defendants.     |
                                        |
----------------------------------------X
```

KIMBA M. WOOD, U.S.D.J.:

This three-way lawsuit concerns who must pay for $207,445.15 in computer services performed in 2001 and 2002 by Defendant and Third-Party Plaintiff Amisys, LLC, on behalf of Plaintiffs St. Barnabas Hospital and St. Barnabas Community Health Plan, Inc. (collectively, "the Hospital").

The Hospital seeks declaratory judgments that it never had a contract with Amisys, and that it owes Amisys nothing. The Hospital argues that Amisys should look for payment to Third-Party Defendants McKesson Information Solutions, Inc., McKesson Corporation, and McKesson Capital Corporation (collectively, "McKesson"), of whom the Hospital was a client and Amisys, a

1

subcontractor.  McKesson counters that the Hospital agreed to pay Amisys directly.  Amisys simply wants to be paid, either by the Hospital or by McKesson.

All three parties now move for summary judgment.  For the reasons discussed below, the Hospital's motion for summary judgment is granted in part and denied in part, Amisys's motion for partial summary judgment is denied, and McKesson's motion for summary judgment is denied.

**BACKGROUND**

The Hospital signed a contract for software products and services with HBO & Company on November 7, 1997 (the "1997 Contract").[1]  In 1998, the contract was amended so that HBO would provide the Hospital with a medical-billing software product called "Amisys 3000" (the "1998 Amendment").  McKesson then succeeded to HBO's contractual rights and obligations.

In 2001, McKesson sold its Amisys business unit to a company called Platinum Equities, LLC, which in turn transferred the unit to a new entity, Amisys, LLC.  McKesson asked the Hospital to consent to McKesson's assigning its rights and duties under the 1998 Amendment to Amisys.  The Hospital refused.  On June 1, 2001, McKesson and Amisys, unbeknownst to the Hospital, signed a

---

[1] All facts are drawn from the parties' Local Civil Rule 56.1 statements, except where noted.

subcontract (the "Subcontract"), whereby Amisys would render maintenance and other professional services on the Hospital's Amisys 3000 software as McKesson's subcontractor.  The Subcontract gave Amisys the right to collect fees directly from customers.

Meanwhile, the Hospital and McKesson began to dispute McKesson's performance and billing practices; the dispute led to a lawsuit in 2002.  The two sides settled the suit by an agreement dated September 30, 2002 (the "Settlement Agreement"). Under the Agreement, the Hospital paid McKesson $3,146,455.10. (Caldwell Aff., Ex. C, ¶¶ 2, 5.2.)  In return, McKesson released the Hospital "from and against any and all outstanding payment obligations for products or services provided to St. Barnabas by McKesson prior to July 31, 2002 and any invoices submitted to St. Barnabas by McKesson and dated or issued prior to July 31, 2002." (Id. ¶ 6.)  The Settlement Agreement contained the following merger clause:

> This Settlement Agreement contains all of the terms and conditions agreed upon by the Parties regarding the subject matter of this Settlement Agreement.  Any prior agreements, offers, promises, negotiations, or representations, either oral or written, relating to the subject matter of this Settlement Agreement, not expressly set forth in this Settlement Agreement are of no force or effect.

(Id. ¶ 12.)

During settlement negotiations, Hospital attorney Peter Mancino wrote an email stating, "With regard to the outstanding

3

accounts receivable with Amisys, we will work that out directly with Amisys." (Bernstein Decl., Ex. 4.)  The parties disagree about the content and meaning of the other communications that took place before and after this email.

Amisys submitted to the Hospital invoices totaling $207,445.15 for work performed between June 1, 2001 and July 31, 2002.  (Caldwell Aff., Ex. D, at 2.)  The Hospital refused to pay the invoices, claiming that because Amisys was McKesson's subcontractor, the services rendered by Amisys were included in the Settlement Agreement's release of the Hospital's outstanding payment obligations.  The Hospital then filed this action for declaratory judgment that it owes Amisys nothing.  Amisys responded with a Counterclaim against the Hospital and a Third-Party Complaint against McKesson.


**STANDARD FOR SUMMARY JUDGMENT**

To prevail on a motion for summary judgment, the moving party must prove that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006).  An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, in whose favor all factual inferences must be drawn.  McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006).

4

**DISCUSSION**

Because of the overlap of the three separate motions for summary judgment discussed in this Opinion, I will analyze common aspects of this dispute before applying that analysis to the merits of each party's motion.

## I.   The Subcontract Between McKesson and Amisys

The first common question to be resolved is whether the June 1, 2001 agreement between McKesson and Amisys made Amisys a subcontractor or an assignee of McKesson's.  The distinction matters because the client of a general contractor (such as the Hospital here) is in privity of contract with the general contractor's assignee but not with his subcontractor; an assignee may thus bring a breach of contract claim against the client, but a subcontractor may not.  USA Bridge Constr. of N.Y. v. Nat'l R.R. Passenger Corp. (Amtrak), No. 98-CV-7713 (JG), 1999 WL 718078, at *3 (E.D.N.Y. Aug. 30, 1999); Raven Elevator Corp. v. City of New York, 739 N.Y.S.2d 28, 29 (App. Div. 2002).  A subcontractor's sole remedy lies against the general contractor. Sybelle Carpet & Linoleum, Inc. v. E. End Collaborative, Inc., 562 N.Y.S.2d 205, 206 (App. Div. 1990).  One exception to this rule is that the subcontractor may sue the client directly if the client "acted in such a way as to incur obligations to the subcontractor outside the contractual structure." U.S. E.

5

<u>Telecommc'ns, Inc. v. U.S. W. Commc'ns Servs., Inc.</u>, 38 F.3d 1289, 1297 (2d Cir. 1994).

Although McKesson and Amisys had the option to fashion their agreement as an outright assignment rather than a subcontract (the Hospital's refusal to consent notwithstanding), they failed to exercise that option. To prohibit nonconsensual assignment, a contract must contain "clear, definite and appropriate language" declaring any assignment void. <u>Allhusen v. Caristo Constr. Corp.</u>, 103 N.E.2d 891, 893 (N.Y. 1952). A contract that lacks such language is assignable, <u>Pravin Banker Assocs., Ltd. v. Banco Popular del Peru</u>, 109 F.3d 850, 856 (2d Cir. 1997), so long as the nonassigning party receives notice, <u>Tri City Roofers, Inc. v. Ne. Indus. Park</u>, 461 N.E.2d 298, 299 (N.Y. 1984). Although the 1997 Contract between the Hospital and HBO, to which McKesson succeeded, authorizes each side to assign the contract under certain specified conditions (Caldwell Aff., Ex. A, ¶ 15.3), the enumeration of those conditions does not suggest assignment is prohibited under all other circumstances. Similarly, the fact that the 1998 Amendment permits assignment by HBO in certain situations (<u>id.</u>, Ex. B, ¶ 10) does not mean that assignment is prohibited in all others. Neither document contains "clear, definite, and appropriate" language purporting to make it unassignable.

But while the Subcontract between McKesson and Amisys could

have been drafted as an assignment, it does not meet the legal standard for one.  Under New York law, "[n]o special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it."  <u>Suraleb, Inc. v. Int'l Trade Club, Inc.</u>, 788 N.Y.S.2d 403, 404 (App. Div. 2004) (internal quotation marks omitted).  More specifically, "any act or words are sufficient which show an intention of transferring the chose in action to the assignee, when the assignor is divested of all control and right to cause of action and the assignee is entitled to control it and receive its fruits."  <u>Miller v. Wells Fargo Bank Int'l Corp.</u>, 540 F.2d 548, 557 (2d Cir. 1976) (internal quotation marks omitted).

The Subcontract does not satisfy this standard, because the parties explicitly chose to subcontract McKesson's rights and obligations to Amisys.  (<u>See</u> McCoobery Aff., Ex. A, at 1 (second, third, fourth whereas clauses); <u>id.</u>, schedule 1, ¶ 79.)  Section 7 of the Subcontract, dealing with payment, does not constitute an assignment, as Amisys contends.  Rather, that section –- which is undifferentiated from the rest of the Subcontract -- permits Amisys to collect funds from customers and requires McKesson to pay Amisys an amount equal to the amount collected.  (<u>Id.</u>, Ex. A, § 7(a).)  The fact that McKesson agreed to compensate Amisys in the amount collected indicates that Amisys collects funds from customers in McKesson's name, and thus that McKesson has not been

divested of all control of the right to payment.

## II.  __Side Arrangements Between the Hospital and Amisys__

As noted in the preceding section, a subcontractor may be in privity with an owner or customer if the latter "acted in such a way as to incur obligations to the subcontractor outside the contractual structure." U.S. E. Telecommc'ns, Inc. v. U.S. W. Commc'ns Servs., Inc., 38 F.3d 1289, 1297 (2d Cir. 1994).

A genuine issue of material fact exists about whether the Hospital acted in such a way as to incur obligations to Amisys. The Hospital and Amisys agree that they arranged for Amisys to provide the Hospital with services other those set out in the 1997 Contract, the 1998 Amendment, and the Subcontract, but they disagree about the extent of those arrangements.  Amisys contends that the Hospital agreed to pay Amisys for certain services independent of its prior agreements with McKesson, to be compensated at hourly rates.  (McCarthy Aff. ¶ 6.)  In support of this contention, Amisys proffers copies of fifteen allegedly unpaid invoices totaling $207,445.15; four of the invoices, totaling $69,614.50, appear to have been billed at hourly rates.[2]

---

[2] This figure is given only to indicate the gulf between the parties' positions.  Invoices 296, 424, 1520, and 1549 appear to have been calculated based on hourly rates rather than flat fees.  However, the invoices are not otherwise identified as having been billed pursuant either to Amisys's Subcontract with McKesson or to independent arrangements with the Hospital, and neither party has submitted any written contracts between the Hospital and Amisys.

(Olsen Aff., Exs. A-B.)   In response, the Hospital acknowledges
that it had an independent account receivable with Amisys but
contends that it has paid the account.   (McCoobery Reply Aff.,
Exs. A-B.)   This conflicting evidence leads to genuine issues of
material fact about (1) what portion, if any, of the disputed
$207,445.15 is attributable to independent arrangements directly
between the Hospital and Amisys, and (2) whether the Hospital has
paid the accounts resulting from those independent arrangements.

III.   **The Settlement Agreement Between the Hospital and McKesson**

The Hospital and McKesson dispute the meaning of their
Settlement Agreement.   The dispute centers on paragraph 6 of the
Agreement, which states in part: "McKesson hereby releases St.
Barnabas from and against any and all outstanding payment
obligations for products or services provided to St. Barnabas by
McKesson prior to July 31, 2002 and any invoices submitted to St.
Barnabas by McKesson and dated or issued prior to July 31, 2002."
(Caldwell Aff., Ex. C, ¶ 6 (emphasis added).)   The crux of the
dispute is whether the words "by McKesson" include products or
services provided, and/or invoices submitted, to the Hospital by
subcontractors of McKesson with whom the Hospital was not in
privity.

Under New York law, a written settlement agreement between
represented parties is equivalent to a contract and is subject to

9

the rules governing the interpretation of contracts.  <u>Bank of</u>
<u>N.Y. v. Amoco Oil Co.</u>, 35 F.3d 643, 661 (2d Cir. 1994).  The
interpretation of an unambiguous provision in a contract is a
function for the court.  <u>Teitelbaum Holdings, Ltd. v. Gold</u>, 396
N.E.2d 1029, 1032 (N.Y. 1979).  A contract provision is ambiguous
if it is "susceptible of at least two fairly reasonable
interpretations."  <u>Am. Home Assurance Co. v. Balt. Gas & Elec.</u>
<u>Co.</u>, 845 F.2d 48, 51 (2d Cir. 1988).  The court gauges ambiguity
by reference to the contract alone.  <u>Burger King Corp. v. Horn &</u>
<u>Hardart Co.</u>, 893 F.2d 525, 527 (2d Cir. 1990).  Only once the
court finds a provision ambiguous may it consider relevant
extrinsic evidence, to help determine the parties' intent; if the
extrinsic evidence conflicts, summary judgment is inappropriate.
<u>Id.</u> at 528.

       Here, the words "by McKesson" can sustain at least two
fairly reasonable interpretations.  The Hospital argues that the
phrase merely clarifies which products, services, and invoices
are under discussion, and that the words were not intended to
limit the resolution of all outstanding payment obligations
between the parties.  McKesson counters that the words confine
the Settlement Agreement to products, services, and invoices
actually generated by McKesson's employees rather than Amisys's.

       There is much to recommend the Hospital's view.  Its
interpretation is consonant with the stated intent of the

Settlement Agreement, that "St. Barnabas and McKesson's relationship after the Settlement Date shall be limited to the rights and obligations of the parties with respect to the Retained Software,"[3] subject to a few carefully drawn exceptions that do not apply here.  (Caldwell Aff., Ex. C, ¶ 3.)  McKesson's interpretation of the words "by McKesson," by contrast, appears to be inconsistent with this intent: because Amisys was McKesson's subcontractor and therefore not necessarily in privity with the Hospital, any unexcused payment disputes between the Hospital and Amisys would likely draw in McKesson, which would thwart the goal of limiting the parties' relationship after signing the Settlement Agreement.  Moreover, if the Settlement Agreement were read as McKesson suggests, the release of further payment obligations would be significantly limited by language that is vague and almost offhanded, in contrast to the definite and precise language by which the Agreement spells out the other limits on its compass.

Despite these flaws, however, McKesson's interpretation is "fairly reasonable," because in ordinary speech one might reasonably use the name of a company in the restrictive sense McKesson suggests.  The parties might have intended the

---

[3] The Settlement Agreement specified that McKesson would continue to provide certain software products and services, the so-called "Retained Software," to the Hospital after the date of the Settlement Agreement.  The contracts governing the Retained Software are not relevant to this dispute.

unelaborated phrase "by McKesson" to exclude from the release of payment obligations products, services, and invoices generated by Amisys. This interpretation is supported by the separate reference to "invoices" beside "products and services": while Amisys's services were provided in fulfillment of McKesson's obligations and thus arguably "by McKesson," the physical invoices were submitted by Amisys itself in accordance with the terms of the Subcontract.

Because I cannot resolve this ambiguity from the text of the Settlement Agreement alone, I next turn to extrinsic evidence submitted by the parties in support of their interpretations. McKesson presents three forms of extrinsic evidence: (1) an email written during settlement negotiations by Peter Mancino, the Hospital's lawyer, that purportedly removed Amisys's invoices from the scope of the Settlement Agreement (Bernstein Decl., Ex. 4); (2) emails and descriptions of phone calls about the Amisys invoices exchanged by counsel after the settlement was concluded (id. ¶ 12; id., Ex. 5); and (3) the assertion of Merrick Bernstein, McKesson's lawyer, that the disputed $207,445.15 was not factored into the parties' agreed-on settlement payments (id. ¶ 9). The Hospital provides (1) an affidavit from Mancino disputing Bernstein's characterization both of the correspondence and of the basis for computing the settlement payments (Mancino Aff. ¶¶ 2-12); and (2) post-settlement emails other than those

presented by McKesson (McCoobery Reply Aff., Ex. B).  This
extrinsic evidence is in conflict.  Accordingly, there is a
genuine issue of material fact regarding the meaning of the
phrase "by McKesson" in the Settlement Agreement.

## IV.  **Peter Mancino's August 27 Email**

In support of their motions, both Amisys and McKesson rely
on an August 27, 2002 email written by Mancino, a lawyer for the
Hospital.  Bernstein, McKesson's lawyer, had asked Mancino for "a
response to my previous e-mail regarding [the Hospital's] intent
to pay Amisys."  (Bernstein Decl., Ex. 4.)  Mancino replied,
"With regard to the outstanding accounts receivable with Amisys,
we will work that out directly with Amisys."  (Id.)

McKesson argues that the Mancino email was a binding
agreement between the Hospital and McKesson that removed the
disputed Amisys invoices from the scope of the Settlement
Agreement.  This is an impermissible attempt to offer the email
as parol evidence to alter the terms of the Settlement Agreement,
a final, integrated contract.  The Settlement Agreement states
that "[a]ny prior agreements, offers, promises, negotiations, or
representations, either oral or written, relating to the subject
matter of this Settlement Agreement, not expressly set forth in
this Settlement Agreement are of no force or effect."  (Caldwell
Aff., Ex. C, ¶ 12.)  Thus, even though Mancino's email may be

13

admissible to clarify what the parties meant by the ambiguous terms of their contract, it is not admissible to supplement or amend that contract.  "'[W]hile the parol evidence rule requires the exclusion of evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution of a written [contract] which may tend to vary or contradict its terms . . . such proof is generally admissible to explain ambiguities therein.'"  U.S. Fire Ins. Co. v. Gen. Reinsurance Corp., 949 F.2d 569, 571 (2d Cir. 1991) (quoting 67 Wall St. Co. v. Franklin Nat'l Bank, 333 N.E.2d 184, 186-87 (N.Y. 1975)) (omission and second alteration in original); see also W.W.W. Assocs., Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.").[4]

Amisys's Counterclaim alleges that during the course of settlement negotiations the Hospital and McKesson "entered into a side agreement orally and/or verbally, pursuant to which St. Barnabas agreed to pay the outstanding balance due and owing to Amisys," and that Amisys was a third-party beneficiary of that agreement.  (Amisys Counterclaim ¶¶ 10-11.)  This claim fails for

---

[4] McKesson's citation of On Line Power Technologies, Inc. v. Square D Co., No. 03 Civ. 4860 (CM), 2004 U.S. Dist. LEXIS 9655 (S.D.N.Y. Apr. 30, 2004), is not relevant.  While it is true that electronic signatures may be valid and enforceable, id. at *27, the admissibility of Mancino's email has nothing to do with its form, electronic or otherwise.

the same reason: any alleged side agreement between the Hospital and McKesson during settlement negotiations runs afoul of the Settlement Agreement's merger clause and thus cannot be admitted under the parol evidence rule.

## APPLICATION

The above analysis can now be applied to each party's motion for summary judgment.  For purposes of each motion I view the facts in the light most favorable to the nonmoving parties.

## I.   The Hospital's Motion for Summary Judgment

The Hospital moves for summary judgment granting its four claims for declaratory relief and dismissing Amisys's four counterclaims.

## A.   First Request for Declaratory Relief: No Oral or Written Contract

First, the Hospital seeks a declaratory judgment that no oral or written contract existed between the Hospital and Amisys in connection with the $207,445.15 at issue in this case.  As explained in Section II of the Discussion, there is a factual issue concerning whether some portion of the disputed sum is attributable to independent arrangements between the Hospital and Amisys and, if so, whether the Hospital has already paid its account to Amisys.  Any such independent arrangements must have

been created by an oral or written contract.  This factual issue
renders summary judgment inappropriate.

**B.    Second Request for Declaratory Relief: Quasi-Contract or
        Quantum Meruit**

The Hospital next requests a declaratory judgment that it is
not liable to Amisys on theories of quasi-contract or quantum
meruit.  "The existence of an express agreement, whether oral or
written, governing a particular subject matter precludes recovery
in quasi-contract for events arising out of the same subject
matter."  Morales v. Grand Cru Assocs., 759 N.Y.S.2d 890, 891
(App. Div. 2003); see also Ross v. DeLorenzo, 813 N.Y.S.2d 756,
760 (App. Div. 2006) (stating same rule for quantum meruit
recovery).  Here, the parties agree that Amisys performed all the
disputed services pursuant to either (1) the Subcontract or (2)
express oral or written agreements with the Hospital, although
they disagree about which services fall into which category and
who bears the responsibility to pay.  Because both the
Subcontract and any Hospital-Amisys agreement qualify as express
agreements, neither quasi-contract or quantum meruit recovery is
possible.  Summary judgment is therefore granted.

**C.    Third Request for Declaratory Relief: Account Stated**

The Hospital's third claim for declaratory relief is that
Amisys cannot demonstrate liability on a theory of account

16

stated.  An account stated is "an agreement between the parties
to an account based upon prior transactions between them with
respect to the correctness of the separate items composing the
account and the balance due, if any, in favor of one party or the
other."  Chisholm-Ryder Co. v. Sommer & Sommer, 421 N.Y.S.2d 455,
457 (App. Div. 1979).  The agreement fixing the sum to be paid
may be either express or implied, such as by a debtor's silence
for a reasonable time after receipt of the account.  Navimex S.A.
de C.V. v. S/S "N. Ice", 617 F. Supp. 103, 105 (S.D.N.Y. 1984).

Amisys has presented evidence that the Hospital "has never
questioned that the services were provided, the adequacy of the
services provided, the amounts charged for the services or that
the invoices were delivered."  (Amisys Rule 56.1 Statement ¶ 9.)
A reasonable jury could find that some portion of the disputed
$207,445.15 is attributable to side agreements between the
Hospital and Amisys, as described in Section II of the
Discussion, and that the Hospital failed to question the account
submitted pursuant to those agreements within a reasonable time.
This factual issue precludes resolution on summary judgment of
Amisys's claim for an account stated.

**D.   Fourth Request for Declaratory Relief: Release from
       Liability**

Finally, the Hospital asks for a declaratory judgment that
it was released from liability by the Settlement Agreement, a

17

contention that necessarily hinges on the meaning of that Agreement.  The meaning of the Settlement Agreement is disputed, barring summary judgment.

**E.   First Counterclaim: Ratification of Assignment**

Amisys's first counterclaim is that the Hospital ratified an assignment to Amisys of McKesson's right to collect payment from the Hospital.  As explained in Section I of the Discussion, the provision of the Subcontract dealing with payment is not properly an assignment.  Moreover, the Hospital's "ratification" or consent would not have been necessary to assign McKesson's rights under the 1997 Contract and the 1998 Amendment, because those agreements did not prohibit assignment.  As a result, there is no legal significance to the first counterclaim, and the Hospital is entitled to a summary judgment dismissing it.

**F.   Second Counterclaim: Third-Party Beneficiary**

Amisys next counterclaims that the Hospital and McKesson entered into a side deal pursuant to which the Hospital agreed to pay the invoices submitted by Amisys.  The only possible evidence in support of this theory is the August 27 email from Peter Mancino to Merrick Bernstein.  I concluded in Section IV of the Discussion that the Mancino email is inadmissible as evidence of a binding side agreement between the Hospital and McKesson.  The

second counterclaim is therefore dismissed.

**G.    Third Counterclaim: Account Stated**

Summary judgment shall not issue on the third counterclaim, which alleges an account stated between Amisys and the Hospital, for the reasons stated in Section C above.

**H.    Fourth Counterclaim: Receipt and Enjoyment of Services**

Amisys alleges that "Amisys provided services to St. Barnabas with a reasonable expectation of being paid for said services" and that "[d]espite having received and enjoyed the benefits of those services, St. Barnabas has not paid the fair value for those services." (Amisys Counterclaim ¶¶ 18, 20.) Because this counterclaim makes no reference to any express agreement between any party, I interpret it as a claim sounding in quasi-contract or <u>quantum meruit</u>. I concluded in Section B above that any recovery owed to Amisys by either the Hospital or McKesson is traceable to some express agreement. Because Amisys cannot make out a claim for quasi-contractual recovery, the fourth counterclaim is dismissed.

**II. <u>Amisys's Motion for Partial Summary Judgment</u>**

Amisys moves for partial summary judgment on two issues. First, Amisys asserts that its damages amount to $207,445.15 plus

19

pre- and post-judgment interest and all taxable costs of suit, whether against the Hospital, McKesson, or a combination of the two.  Second, Amisys claims it has proven that it is entitled to that sum, whether from the Hospital, McKesson, or both.

Federal Rule of Civil Procedure 56(a) permits a party to move for summary judgment "upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment."  Fed. R. Civ. P. 56(a).  "The plain language of Federal Rule of Civil Procedure 56 indicates that it is not appropriate to use summary judgment as a vehicle for fragmented adjudication of non-determinative issues." SEC v. Thrasher, 152 F. Supp. 2d 291, 295 (S.D.N.Y. 2001); accord United States v. Am. Int'l Group, Inc., No. 94 Civ. 7621 (LMM), 1997 WL 66786, at *2-3 (S.D.N.Y. Feb. 14, 1997).  The only exception to this bar is that a party may pursue interlocutory summary judgment on liability despite a genuine issue as to the amount of damages.  Fed. R. Civ. P. 56(c).  Because neither of Amisys's requests for summary judgment seeks determination of a claim, counterclaim, or cross-claim, and neither one falls within the exception specified in Rule 56(c), Amisys's motion for partial summary judgment is denied.

### III.  <u>McKesson's Motion for Summary Judgment</u>

McKesson moves for summary judgment dismissing Amisys's four third-party claims, namely, that McKesson (1) breached its

obligations under the Subcontract, (2) converted receivables owed to Amisys, (3) collected receivables due to Amisys without transferring them, and (4) received the value of Amisys's services.  All four of these claims depend on the meaning of the phrase "by McKesson" in the Settlement Agreement, about which there is a factual issue.  Accordingly, McKesson is not entitled to summary judgment.

**CONCLUSION**

For the reasons stated above, the Hospital's motion for summary judgment is GRANTED with respect to its second claim for declaratory judgment and DENIED with respect to its first, third, and fourth claims for declaratory judgment.  Amisys's first, second, and fourth counterclaims are DISMISSED.  Amisys's motion for partial summary judgment is DENIED.  McKesson's motion for summary judgment is DENIED.

SO ORDERED.

Dated:     New York, New York
           March 5, 2007

_____
           Kimba M. Wood
     United States District Judge

21